IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TIMOTHY S. TRADER,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:12-cv-00924-CW-EJF<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Timothy Trader filed this action asking the Court to reverse the final agency decision denying his Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401–434 (2010).[1] The Administrative Law Judge ("ALJ") determined Mr. Trader did not meet the eligibility standard for benefits because he "was not under a disability, as defined in the Social Security Act, at any time from June 8, 2003, the alleged onset date, through December 13, 2008, the date last insured." (Admin. R. Doc. 688, certified copy tr. of R. of admin. proceedings: Timothy S. Trader (hereinafter "Tr. __").). Having carefully considered the complete record in this matter and the parties' Memoranda,[2] this Court recommends that the

---

[1]    On December 6, 2012, pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1), Judge Clark Waddoups referred the case to Magistrate Judge Evelyn J. Furse for report and recommendation through and including all dispositive matters. (*See* ECF No. 8.)

[2] The Court decided it does not need oral argument and will determine the appeal on the basis of the written briefs submitted to the Court. *See* DURCiv 7-1(f).

1

District Court REMAND the Commissioner's decision that Mr. Trader does not qualify for Social Security benefits.

## FACTUAL AND PROCEDURAL HISTORY

### I. Medical History

Since childhood, Mr. Trader has suffered severe allergies and asthma. (Tr. 729–30.) Dr. Fuller Royal, M.D., an allergist at the Nevada Clinic, tested him in August 2008, showing allergies to molds, dusts, seasonal irritants, pet dander, and many different foods. (Tr. 420–22.) Mr. Trader refused treatment with Dr. Royal, saying he only needed testing to support his Social Security claim. (Tr. 422, 424.) Mr. Trader saw Dr. William Rea, M.D., over a period of ten days for extensive testing at the Environmental Health Center. Dr. Rea found Mr. Trader had elevated venous blood gas, low T-cell count, and allergic reactions to many chemicals and foods. (Tr. 625–32.) Dr. Rea diagnosed Mr. Trader with multiple chemical sensitivity ("MCS"), toxic encephalopathy, asthma, food allergies, immune deregulation, vasculitis, and automatic nervous system dysfunction. (Tr. 629.)

Dr. Rea referred Mr. Trader to neuropsychologist Dr. Nancy Didriksen, Ph.D., who performed a consultative evaluation to determine if MCS impairs Mr. Trader's mental functioning. Dr. Didriksen diagnosed Mr. Trader with mixed anxiety, depressed mood, cognitive disorder, and adjustment disorder. (Tr. 445.) Dr. Didriksen found Mr. Trader's mental functioning fell in the low-normal range when measuring executive functions and mild to moderately impaired range when measuring information processing. (Tr. 442.) Dr. Didriksen adjusted these scores to compare Mr. Trader with his age, sex, educational, and racial peers.

Before adjustment, his intellectual functioning scores fell in the average or above average range for the overall population. (Tr. 439–41.)

During the hearing, Mr. Trader stated symptoms caused by temporomandibular joint dysfunction ("TMJ") and MCS severely restrict his activities and ability to work. He suffers daily headaches from TMJ, which MCS exacerbates, and he finds breathing difficult due to his severe allergies. (Tr. 722.) Mr. Trader reports chemicals impair his memory and mental functioning, making interacting with people and driving difficult after exposure to chemicals. (Tr. 724.) He does not take medication or see doctors to avoid exposure to chemicals or potential allergens. (Tr. 724–25.) He cannot interact with many people beyond his wife and mother-in-law without getting ill. (Tr. 738.) Mr. Trader suffers from depression as a result of isolation and hopelessness. (Tr. 735–36.) He does chores around the house, such as fixing small meals, washing dishes without soap, or vacuuming with a special vacuum, but cannot leave the house to buy groceries or run errands. (Tr. 737–38.)

Mr. Trader has also experienced severe dental problems for a lengthy amount of time. In 1987, an arthroscopy showed a surgical need for lysis of adhesions and relocation of the meniscus of the temporomandibular joints bilaterally. (Tr. 325–26.) He was admitted to the hospital in 1988 for joint reconstruction of bilateral temporomandibular joints. (Tr. 320–21.) Mr. Trader underwent diagnostic imaging of the jaw in March 2008, which revealed narrowed superior joint space, displaced teeth, and thinning of soft tissues separating superior and inferior joint compartments. (Tr. 339.) In August 2008, James Ott, D.D.S., diagnosed Mr. Trader with extreme TMJ and extreme acid erosion, finding both produced problems with Mr. Trader's bite. (Tr. 578.) In November 2008, Patrick Bondad, D.D.S., noted Mr. Trader suffered from constant

3

headaches, these headaches lasted several days, and the TMJ likely exacerbated them. (Tr. 565–66.) In November 2008, Robert McBride, D.D.S., noted missing teeth caused unbalanced support for Mr. Trader's TMJ and contributed to his head and neck symptoms. (Tr. 377.)

## II. Procedural History

Mr. Trader filed an application for Disability Insurance Benefits on November 26, 2008. (Tr. 195–201.) The Social Security Administration ("SSA") denied his initial application on March 23, 2009. (Tr. 74.) Mr. Trader requested reconsideration of the decision on April 27, 2009, and the SSA again rejected the application, finding no disability on May 27, 2009. (Tr. 78–79.) He requested a hearing before the ALJ on June 1, 2009, and the ALJ held the hearing on February 2, 2010. (Tr. 82–83, 30.) The ALJ rejected Mr. Trader's disability claims in a decision dated March 8, 2010. (Tr. 11–25.) Mr. Trader requested a review of this decision by the Appeals Council on May 27, 2010, and the Appeals Council denied the request on November 12, 2010. (Tr. 8–9, 1–5.) This denial made the ALJ's decision the final decision of the Commissioner. Mr. Trader filed an appeal in the District Court of Utah, and Judge Bruce Jenkins reversed the decision and remanded the case to the ALJ. (Tr. 801.) Judge Jenkins's decision dated August 3, 2011, ("First Decision") (1) required the ALJ to evaluate the dental records offered by Mr. Trader in determining the residual functional capacity ("RFC") and (2) required the ALJ to pose hypotheticals to the vocational expert that relate with precision to the claimant. (Tr. 805.)

4

After remand, an ALJ[3] conducted a second hearing on May 7, 2010, where Mr. Trader, Dr. Morrison, and a vocational expert testified. (Tr. 695.) The ALJ issued a decision on July 27, 2012 ("Second Decision"), finding Mr. Trader not disabled and able to perform past relevant work. (Tr. 665–94.) Mr. Trader again appealed to the district court, arguing the ALJ improperly disregarded his diagnosis of MCS and did not properly weigh medical opinions in his case. (Pl.'s Opening Br. 7–8, ECF No. 12.)

### III. Disability Assessments

Dr. James Ottesen, Ph.D., completed a mental RFC questionnaire for Mr. Trader in February 2010. He found Mr. Trader could not perform the following activities for ten percent of an eight-hour workday: accepting instructions, responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. Dr. Ottesen found Mr. Trader could not understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and punctuality, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods for fifteen percent of the workday. (Tr. 648–49.)

Dr. Rea completed a physical RFC for Mr. Trader on January 5, 2010. He recommended Mr. Trader avoid all exposure to cigarette smoke, perfumes/colognes, cosmetics, air fresheners, solvents/cleaners, fumes/odors/gases, pesticides, pollutants, toxicants, soldering fluxes,

---

[3] The original ALJ, Robin Henrie, was unavailable for the second hearing held in St. George, so ALJ Donald Jensen reheard the case.

petrol/gas/diesel, glues, dust/pollen, sand, chemicals, wool, rubber products, synthetic fibers, dust mites, and pet dander. (Tr. 636.) Dr. Rea stated that if exposed to chemicals, Mr. Trader would need to lie down for eight hours of a workday, need unscheduled breaks whenever exposed or to avoid exposure, experience memory lapses, be absent more than six days of any given month, and be unable to obtain or retain work due to medical impairments. (Tr. 637–40.)

## **STANDARD OF REVIEW**

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the SSA. The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence."

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The Court need not accept the Commissioner's findings mechanically, but must "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the Court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

# ANALYSIS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden

shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

The ALJ evaluated Mr. Trader's claim through step four, making the following findings of fact and conclusions of law with respect to Mr. Trader:

1. "[Mr. Trader] last met the insured status requirements of the Social Security Act on December 13, 2008." (Tr. 670.)
2. "[Mr. Trader] did not engage in substantial gainful activity during the period from his alleged onset date of June 8, 2003 through his date last insured of December 13, 2008 (20 CFR 404.1571 *et seq.*)." (*Id.*)
3. "Through the date last insured, [Mr. Trader] had the following severe impairments: a headache disorder, a temporomandibular joint dysfunction (TMJ), asthma, an adjustment disorder and a cognitive disorder (20 CFR 404.1520(c))." (*Id.*)
4. "Through the date last insured, [Mr. Trader] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 671.)
5. "After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, [Mr. Trader] had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He has environmental limits requiring the need to avoid even 'moderate' exposure to respiratory irritants. He also has mental limitations. For instance, in the area of understanding, carrying out and remembering instructions, he is limited to simple, routine work. In his ability to use judgment in making work-related decisions, due to decreased attention and concentration, he would be limited to those decisions found in simple, routine work. In his ability to respond appropriately to supervision, co-workers and work situations, he is not significantly limited. Lastly, in his ability to deal with changes in a routine work setting, he is not significantly limited." (Tr. 671–72.)
6. "Through the date last insured, [Mr. Trader] was capable of performing past relevant work as a retail salesperson, DOT 29.357+054, a light/semi-skilled (SVP 3) job; deli worker, DOT 316.684-014, a light/unskilled (SVP 3); and a stock clerk, DOT 299.367, a heavy/semi-skilled (SVP 4) job. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (Tr. 687.)
7. "[Mr. Trader] was not under a disability, as defined in the Social Security Act, at any time from June 8, 2003, the alleged onset date, through

9

December 13, 2008, the date last insured (20 CFR 404.1520(f))." (Tr. 688.)

The ALJ concluded Mr. Trader did not have an impairment that meets one of the medical listings in C.F.R. Part 404, Subpart P, Appendix 1, he had the RFC to perform a full range of work with some limitations, and he was could perform his past relevant work as a retail salesperson, deli worker, or a stock clerk. (Tr. 687.)

Mr. Trader makes two arguments in support of his claim that this Court should reverse the Commissioner's decision and grant benefits: (1) the ALJ erred in finding MCS did not qualify as a medically determinable impairment, and (2) the ALJ failed to explain the weight given to each medical opinion and the reasons for that weight. (Pl.'s Opening Br. 7–8, ECF No. 12.) The Court examines each of these arguments in turn and also examines some of its own concerns.[4]

## I. Evaluation of Multiple Chemical Sensitivity

Mr. Trader alleges the ALJ's decision does not adequately evaluate his MCS claims because the ALJ does not recognize MCS as a medically determinable impairment at step two of the evaluation process. Mr. Trader further states the ALJ disregards precedent and Social Security policy by finding MCS does not constitute a medically determinable impairment. The SSA has recognized MCS as a medically determinable impairment in multiple cases. *See Creamer v. Callahan*, 981 F. Supp. 703, 705 (D. Mass. 1997) (noting the Administration's

---

[4] A paragraph on the bottom of page five of the Second Decision concerned the Court, as it referred to Mr. Trader using female pronouns and includes daily activities he claimed he never performed. The Court does not address this issue, but notes it so that the ALJ can clarify it on remand.

stipulation that MCS constitutes a medically determinable impairment); *Teitelbaum v. Astrue*, No. CV 10-07167 RZ, 2011 U.S. Dist. LEXIS 128032 at *12 (C.D. Cal. November 3, 2011) (finding an error where an ALJ ignored medical evidence of MCS and ruled plaintiff did not have a medically severe impairment); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 U.S. Dist. LEXIS 13076 at *31 (N.D. Tex. February 9, 2011) (noting ALJ's finding that plaintiff had a severe impairment at step two from her chemical sensitivity); *Wall v. Astrue*, No. CV 09-02807, 2010 U.S. Dist. LEXIS 69465 at *2 (C.D. Cal. July 13, 2010) (noting ALJ's finding of chemical sensitivity as a severe impairment at step two). The Social Security Program Operations Manual also lists chemical sensitivity as a medically determinable impairment. POMS DI 24515.064.

Step two of the sequential evaluation process requires the ALJ to decide whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments qualifies as severe when it significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). If the ALJ finds one or more severe impairments, he continues to step three. 20 C.F.R. § 404.1520(a)(4). If the ALJ does not find at step three that the claimant's impairment or impairments meets or equals a listing in appendix 1, the ALJ continues at step four to determine the claimant's RFC. 20 C.F.R. § 404.1521(a)(iii)–(iv). In determining the RFC, the ALJ considers all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). Because the ALJ considers both severe and non-severe impairments at later steps, any failure to designate additional severe impairments at step two constitutes harmless error if the ALJ finds at least one severe impairment and continues with the sequential evaluation process. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008).

11

In this case, the ALJ found Mr. Trader suffered from severe impairments at step two, including headache disorder, TMJ dysfunction, asthma, adjustment disorder, and a cognitive disorder. (Tr. 670.) Thus any error in failing to find Mr. Trader's MCS severe, is harmless.

## II. Weight of Medical Opinion Evidence

Mr. Trader offers medical opinions from multiple doctors to support his disability claims. The ALJ analyzes the weight of each doctor's evidence in turn. Mr. Trader alleges the ALJ failed to determine the weight of Dr. Royal's medical evidence, did not apply the correct factors to Dr. Morrison's testimony, and did not properly weigh Dr. Rea's medical evidence. The Court disagrees with the ALJ's analysis with respect to Drs. Royal and Morrison, but accepts the ALJ's determination of the weight accorded to Dr. Rea's medical evidence.

In weighing the medical evidence, the ALJ must consider the following factors for each doctor: (1) the examining relationship to the patient; (2) whether the source of the opinion has treated the patient, including the length and nature of the treatment; (3) relevant evidence in the medical opinion; (4) consistency with the entire medical record; (5) the doctor's specialization; and (6) any other relevant factors that tend to support or contradict the opinion. 20 C.F.R. §416.927(c). Moreover, the ALJ's decision need not discuss explicitly all of the factors for each of the medical opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a lack of discussion of each factor does not prevent the court from according the decision meaningful review).

Dr. Rea

Dr. Morrison reported a Texas Medical Board citation of Dr. Rea during his hearing testimony, which severely undermined Dr. Rea's credibility. (Tr. 766–69.) Based on this

12

citation, the ALJ gave Dr. Rea's medical opinion no weight. (Tr. 685.) "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations omitted). Substantial evidence supports the ALJ's determination, and the Court will not disturb that determination. The Texas Medical Board cited Dr. Rea in 2007. Dr. Rea did not resolve the citation until 2010, after he tested Mr. Trader. The record contains evidence that Dr. Rea performed inaccurate testing and used unsupported methods of testing. Therefore, the Court finds the ALJ's according the medical evidence provided by Dr. Rea no weight supported by substantial evidence.

<u>Dr. Royal</u>

The Second Decision does not mention Dr. Royal's name explicitly, although the ALJ mentions testing from the Nevada Clinic. The ALJ never states how this testing factors into the decision nor does he detail the weight he gives to Dr. Royal's medical opinion. "[U]nless a treating source opinion is given controlling weight, *all* medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations." *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)); SSR 96–5p (July 2, 1996) (emphasis in original). The Court finds this error serious, considering Dr. Royal's allergy testing and other treatment provides evidence of potential MCS. Therefore, the ALJ must consider Dr. Royal's medical records and assign a weight in determining disability.

Dr. Morrison

Dr. Morrison testified during the hearing as a non-examining medical expert after reviewing Mr. Trader's medical files. The ALJ gave "great weight" to Dr. Morrison's testimony. (Tr. 686.) The ALJ does not explicitly consider each of the factors when giving Dr. Morrison's opinion controlling weight, but he does consider how the record evidence supports Dr. Morrison's testimony. (*Id.*) Therefore the Court finds no error where the ALJ gave great weight to Dr. Morrison's testimony.

### III. Vocational Expert's Testimony

The ALJ questioned the vocational expert during Mr. Trader's hearing about a hypothetical individual with limitations similar to Mr. Trader. The ALJ misconstrued this testimony in the Second Decision. During the hearing, the vocational expert testified that a person limited to simple, routine work with little or no decision making could do some of Mr. Trader's past relevant work as a deli worker, retail salesperson, or stock clerk. (Tr. 775–76.) However, once the vocational expert factored in limitations on even moderate exposure to airborne irritants into the hypothetical, Mr. Trader could not perform any of those jobs. (Tr. 776–77.) The vocational expert asserted that Mr. Trader might be able to work from home or in a small office with people who could avoid using chemicals, which he estimated as possible in ten to fifteen percent of small offices. (Tr. 777.) The ALJ determined Mr. Trader had the same RFC as the hypothetical individual, including the same limitations on even moderate exposure to airborne irritants. (Tr. 671–72.) However, the ALJ found Mr. Trader could perform past relevant work as a retail salesperson, deli worker, or a stock clerk based on the vocational expert's testimony. (Tr. 687.) The ALJ did not discredit the vocational expert's testimony at all.

The ALJ clearly misinterpreted the vocational expert's testimony. The ALJ's determination that Mr. Trader could perform past relevant work ended the analysis, whereas if the ALJ had correctly understood the vocational expert's testimony, the analysis would have proceeded to the fifth step. The Court finds this error exceeds the harmless error threshhold. A harmless error is one "minor enough not to undermine confidence in the determination of th[e] case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993). Because the decision that Mr. Trader could do past relevant work proved dispositive in this case, basing that finding on an inaccurate portrayal of the vocational expert's testimony does not constitute a harmless error and undermines confidence in the determination of the case.

## **CONCLUSION**

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS the District Court REMAND the case for further administrative proceedings consistent with this report and recommendation.

The Court will send copies of this Report and Recommendation to the parties, who are hereby notified of their right to object to the same. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). The Court further notifies the parties they must file any objection to this Report and Recommendation with the clerk of the court within fourteen (14) days after being served with a copy thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 22nd day of August, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge